IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOHANNA ZAYAS,

Plaintiff,

v.                                                    Civil No. 07-2112 (GAG/BJM)

FRANK TORRES-OQUENDO, et al.,

Defendants.

**OPINION AND ORDER**

Plaintiff Johanna Zayas brought this action against her former employer Medical Card Systems ("MCS") and her former supervisor Frank Torres-Oquendo ("Torres") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and local Law 17, P.R. Laws Ann., tit. 29, §§155 et seq., Law 80, P.R. Laws Ann., tit. 29, §§ 185a et seq., and Law 100, P.R. Laws Ann., tit. 29, §§ 146 et seq., claiming gender-based discrimination (Docket No. 1). Defendants moved for summary judgment (Docket No. 39) pursuant to Fed.R.Civ.P. 56. In their motion for summary judgment they argue: (a) that plaintiff cannot establish a hostile work environment claim because she was not subjected to severe or pervasive harassment that materially altered the conditions of her employment; (b) that plaintiff cannot establish that she was subjected to acts of retaliation; and (c) that, given that all federal claims fail as a matter of law, the supplemental state law claims should also be dismissed. After reviewing the pleadings, the court **GRANTS IN PART** and **DENIES IN PART** defendants' motion for summary judgment (Docket No. 39).

**I.     Relevant Factual Background**

Plaintiff started working for defendant MCS on January 17, 2006 as a client's service representative at the Call Center for the Classicare Department. On or about April 2006, defendant Torres, plaintiff's immediate supervisor, started expressing unwanted and offensive sexual comments to plaintiff accompanied by obscene looks, which were deterred and objected to by plaintiff. On or about May 4, 2006, after plaintiff had a business conversation with defendant Torres in his office, he expressed his admiration for her and commented on how beautiful she was and that

**Civil No. 07-2112 (GAG/BJM)**

they should go out together sometime. Later that day, defendant Torres sat besides plaintiff during a seminar and recognition ceremony and told her that "she was so pretty that he went crazy every time she wore her white slacks." On or about May 11, 2006, while she was wearing a white suit, defendant Torres approached plaintiff and requested that she no longer attend the office dressed like that because he was going crazy. On or about May 16, 2006, defendant Torres sat beside plaintiff during her lunch time and staring at her commented that he did not know why he felt so much love for her. Plaintiff alleged in her complaint that she feared that if she filed a complaint with Human Resources, she would not approve her probation period or that she would suffer retaliation from management. On or about May 18, 2006, defendant forcibly grabbed plaintiff's hands and, after telling her how beautiful she was, asked her if she was still mad at him. On that same date, plaintiff went to the Human Resources office to file a claim. Immediately after plaintiff's meeting at the Human Resources office, defendant Torres requested to see her in his office and questioned her about her recent visit to Human Resources. The next day, plaintiff started working under the supervision of Ms. Agnes Candelario. Nonetheless, she was still working in the same area and only four cubicles apart from defendant Torres, who could still walk, talk, and work near her space. On or about May 22, 2006, plaintiff was interviewed by the Director of the Human Resources Department. Plaintiff informed the Director that she had been the victim of sexual harassment and a hostile work environment. The Director told plaintiff that an investigation would soon be started. On or about May 23, 2006 plaintiff sent an email to the Director of Human Resources Department expressing that she felt intimidated by the way defendant Torres kept staring at her. Plaintiff alleged in her complaint that she never received an answer to such communication. On May 26, 2006, plaintiff was called upon to present a sworn statement before the Director of the Human Resources Department. Immediately afterwards, plaintiff was told that there was nothing MCS could do because of the lack of witnesses. Furthermore, she was told that Torres was to be suspended for two weeks.

Plaintiff avers in her complaint that after filing her claim for sexual harassment, ninety

**Civil No. 07-2112 (GAG/BJM)**

percent of her calls started to be monitored. She further stated that she felt a hostile work environment and that there was constant pressure from management for her actions. On July 14, 2006, plaintiff received an email from her supervisor telling her that she should not use capital letters and font size 14 for her communications with her peers because it might seem as if she was shouting. On July 15, 2006, plaintiff presented a complaint against her employer and her supervisor at the Anti-Discrimination Unit of the Commonwealth's Department of Labor ("ADU"). She also filed an EEOC charge. On October 6, 2006, plaintiff resigned from her position claiming hostile work environment and retaliation.

## II.     Standard of Review

Summary Judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (citations omitted).

The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party (here, the plaintiff) and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id.

**Civil No. 07-2112 (GAG/BJM)**

### III.     Analysis

### A.     Title VII

In order to succeed in a hostile work environment claim, the plaintiff must show: (1) that she is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that the sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established. O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001). The court's analysis will be limited to prongs 4, 5, and 6 given that the facts of the case show that the first three prongs are easily fulfilled.

The court opines that, under First Circuit case law, the complained-of behavior **barely** rises to the level of severe and pervasive harassment. See O'Rourke, 235 F.3d at 729 (holding that "the accumulated effect of incidents of humiliating, offensive comments directed at women and work-sabotaging pranks, taken together, can constitute a hostile work environment"); Hernandez-Loring v. Universidad Metropolitana, 233 F.3d 49, 54-56 (1st Cir.2000) ("[F]actors to be considered include **frequency**, severity, whether the conduct is 'physically threatening or humiliating,' and whether it 'unreasonably interferes with an employee's work performance.'" (emphasis added)). Given that it is the court's duty to look at the facts in the light most favorable to the non-moving party, the court finds that the complained-of harassment is actionable under Title VII. Here, although the isolated events may not seem offensive, coupled together, and given that they took place within a two week period, a trier of fact could find that they constitute severe and pervasive harassment. Furthermore, it is clear that such behavior was considered hostile and abusive from the plaintiff's standpoint and a reasonable person could also find it to be hostile and abusive.

Finally, the court will address if there is a basis for employer liability. An employer's liability for a hostile work environment claim depends on the harasser's employment status relative to the

**Civil No. 07-2112 (GAG/BJM)**

victim's. MCS would be vicariously liable if plaintiff's supervisor created a hostile work environment, but if a co-worker created the hostile work environment, the employer would only be held liable if it was negligent either in discovering or remedying the harassment. See Torres-Negron v. Merck & Company, Inc., 488 F.3d 34, 40 (1st Cir. 2007). Here, it is clear that the hostile work environment was created by Torres who was plaintiff's supervisor. Therefore, it is unnecessary to analyze whether MCS was negligent in discovering or remedying the harassment. MCS would, thus, be subject to employer liability.

"An employer's vicarious liability for an actionable hostile work environment created by a supervisor is subject to an affirmative defense, which may only be asserted where no tangible employment action is taken." Torres-Negron, 488 F.3d at 40 (citing Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 764-65 (1998)). "Under the Faragher/Ellerth defense, the employer may avoid responsibility if it shows that it 'exercised reasonable care to prevent and correct promptly' the harassment and that the employee 'unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" Torres-Negron, 488 F.3d at 40 (citations omitted). In this case, there is an issue of material fact as to whether there was a tangible employment action against plaintiff and whether MCS's response to plaintiff's complaint was reasonable or not. Therefore, even though MCS can raise the Faragher/Ellerth defense at trial, it would be up to the jury to decide if this defense has been proven by a preponderance of the evidence.

The court notes at this time that the First Circuit has held that there is no individual employee liability under Title VII. See Fantini v. Salem State College, 557 F.3d 22, 31 (1st Cir. 2009). For that reason, plaintiff's claim against Torres in his individual capacity is hereby dismissed.

For the aforementioned reasons, the court **DENIES** defendant's motion for summary judgment as to the Title VII claim against defendant MCS and **GRANTS** defendant's motion for summary judgment as to the Title VII claim against defendant Torres in his individual capacity.

**Civil No. 07-2112 (GAG/BJM)**

**B.     Retaliation**

In order to establish a prima facie case of retaliation the plaintiff has to prove that: "(1) she engaged in protected conduct under Title VII; (2) she suffered an adverse employment action; and (3) the adverse action was causally connected to the protected activity." Fantini, 557 F.3d at 32 (citing Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 22 (1st Cir. 2002)). The First Circuit has held that "[t]o be adverse, an action must materially change the conditions of plaintiff's employ." Gu v. Boston Police Dep't, 312 F.3d 6, 14 (1st Cir. 2002). "Material changes include 'demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees.'" Id. Whether an employment action is "adverse," and therefore actionable, is gauged by an objective standard. Black v. Maine, 75 F.3d 716, 725 (1st Cir. 1996) ("Work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action."). In this case, plaintiff mentions three allegedly adverse employment actions, to wit: (a) that ninety percent of her calls started to be monitored after she filed her sexual harassment complaint; (b) that an email was sent to her by her supervisor calling to her attention that she should not use capital letter and font size 14 to address her co-workers because it might seem as if she is shouting; and (c) that she was constructively discharged from her position.

As to the first allegedly adverse employment action, plaintiff has not offered admissible evidence which shows that her calls were indeed being monitored and/or that they were being monitored in a higher degree than those of her co-workers. Plaintiff's only evidence concerning this allegation was that she had been told that, if she heard an echo in her calls, it meant that they were being monitored. Given that this cannot be corroborated and there is no basis for comparison with her co-workers, the plaintiff has not offered enough evidence to show that an adverse employment action took place. For that reason, this is not an adverse employment action that could give rise to a claim for retaliation.

The second allegedly adverse employment action was an email sent to her by her supervisor.

**Civil No. 07-2112 (GAG/BJM)**

As admitted by the plaintiff in her deposition, even though she received this email from her supervisor, she was not subjected to any discipline because of it. The email was only meant as a warning by her supervisor. Therefore, this email cannot constitute an adverse employment action giving rise to a claim for retaliation.

Finally, plaintiff's claim for constructive discharge is a result of the alleged sexual harassment that took place in violation of Title VII. Therefore, such discharge should be adressed in the context of plaintiff's claim for hostile work environment under Title VII or her claim for wrongful termination under local Law 80. Given that there is no admissible evidence of retaliation on the record, this court **GRANTS** defendants' motion for summary judgment as to the retaliation claim.

### C. Supplemental State-Law Claims

Given that the federal claims have survived defendants' motion for summary judgment, the court still has jurisdiction to decide plaintiffs' state law claims. For that reason, the court **DENIES** defendants' motion for summary judgment as to the state law claims.

### IV. Conclusion

For the abovementioned reasons, the court **GRANTS IN PART** and **DENIES IN PART** defendants' motion for summary judgment (Docket No. 39).

**SO ORDERED.**

In San Juan, Puerto Rico this 27th day of June 2009.

*S/Gustavo A. Gelpí*

GUSTAVO A. GELPI
United States District Judge